Filed 2/21/25  P. v. Stuart CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PERRY STUART,<br><br>    Defendant and Appellant. | B337759<br><br>(Los Angeles County<br> Super. Ct. No. TA110909) |

APPEAL from an order of the Superior Court of Los Angeles County, Carol J. Najera, Judge.  Affirmed.

Ava R. Stralla, under appointment by the Court of Appeal, and Perry Stuart, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

## INTRODUCTION

In 2011, defendant Perry Stuart (Stuart) was convicted of three counts of attempted murder. Stuart filed a petition for resentencing pursuant to Penal Code section 1170.95 (1172.6).[1] The trial court denied Stuart's petition at the prima facie stage, finding he was ineligible for resentencing relief as a matter of law. On appeal, Stuart's appellate counsel filed a brief that summarized the procedural history, raised no issues, and asked this court to independently review the record pursuant to *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*). Stuart submitted his own supplemental brief. After reviewing the contentions raised in Stuart's brief, we affirm the order denying his petition for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2011, after a jury trial, Stuart was found guilty of three counts of attempted murder (§§ 664/187). On each count, the jury also found true the special allegations that Stuart personally and intentionally discharged a firearm in the commission of a felony resulting in great bodily injury (§ 12022.53) and committed the offenses for the benefit of a street gang (§ 186.22). The trial court sentenced Stuart to a prison term of 117 years to life. On direct appeal, this court affirmed Stuart's conviction in an unpublished opinion, *People v. Stuart* (Oct. 23, 2012, B235144).

On March 24, 2023, Stuart filed a petition for resentencing pursuant to section 1172.6. The trial court appointed counsel for Stuart, who argued that under *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*), the jury

---

[1] All further unspecified statutory references are to the Penal Code. Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). For ease of reference, we will refer to the section by its new numbering only.

2

instructions given at trial permitted the jury to impute malice to Stuart. Counsel also argued that errors in the jury instructions and prosecutor's closing argument left open the possibility that Stuart was entitled to relief under section 1172.6.

The trial court denied Stuart's petition after a hearing. In its ruling, the court examined the jury instructions given in Stuart's case. The court noted the jury was not instructed on a theory of felony murder, the natural and probable consequences doctrine, or "any theory of imputed malice based on participation." The trial court also determined *Langi* was "highly distinguishable from the facts in this case." Therefore, the trial court concluded, Stuart was ineligible for relief under section 1172.6.

Stuart timely filed a notice of appeal.

## DISCUSSION

I.    *Legal Standards*

Senate Bill No. 1437 (SB 1437) was enacted by the Legislature to ensure a person's sentence is commensurate with the person's individual criminal culpability. To accomplish this goal, SB 1437 added sections 188, subdivision (a)(3), and section 189, subdivision (e), which collectively limit accomplice liability under the felony-murder rule, eliminate the natural and probable consequences doctrine as it relates to murder, and eliminate convictions for murder based on a theory which allows malice to be imputed to a person based solely on that person's participation in a crime. (See generally *People v. Reyes* (2023) 14 Cal.5th 981; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 959 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).) Senate Bill No. 775 (SB 775) extended these changes to apply to convictions for attempted murder and voluntary manslaughter.

3

SB 1437 also created a procedure, codified at section 1172.6, which allows persons convicted of murder, attempted murder, or voluntary manslaughter to file a petition for resentencing if they could no longer be convicted of those crimes under the law as amended by SB 1437 and SB 775. (*Lewis*, *supra*, 11 Cal.5th at p. 959; *Gentile*, *supra*, 10 Cal.5th at p. 847.) "After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1172.6, subd. (c).) The bar for this prima facie showing was "'intentionally and correctly set very low.'" (*Lewis*, *supra*, 11 Cal.5th at p. 972.) In conducting its prima facie review, the trial court may not engage in fact-finding involving the weighing of evidence or credibility determinations and must assume the truth of all facts stated in the petition. (*Id.* at pp. 971–972; *People v. Flint* (2022) 75 Cal.App.5th 607, 612.)

We review de novo whether the trial court properly denied Stuart's petition without issuing an order to show cause. (*People v. Harrison* (2021) 73 Cal.App.5th 429, 437.)

II.     *Stuart is Ineligible for Relief*

A defendant convicted of attempted murder is eligible for relief under section 1172.6 only if he or she is convicted "under the natural and probable consequences doctrine." (§ 1172.6, subd. (a); see *People v. Rodriguez* (2024) 103 Cal.App.5th 451, 457 [§ 1172.6 "applies 'only to attempted murders based on the natural and probable consequences doctrine'"]; *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865 [same]; *People v. Coley* (2022) 77 Cal.App.5th 539, 548 [same].)

4

The record establishes the jury did not convict Stuart of attempted murder under the natural and probable consequences doctrine. (See *People v. Curiel* (2023) 15 Cal.5th 433, 465 ["we may look to the jury's verdicts, and the factual findings they necessarily reflect, to determine whether the record of conviction refutes the factual allegations in [the defendant's] petition"]; *People v. Nguyen* (2024) 103 Cal.App.5th 668, 677 ["In making the prima facie determination, the court may rely on the record of conviction, including the jury instructions and verdict forms"]; *People v. Gallardo* (2024) 105 Cal.App.5th 296, 301 [the record of conviction includes the jury instructions and verdict forms from the defendant's jury trial].)

"Direct aiding and abetting remains a valid theory of attempted murder after the enactment of Senate Bill No. 775." (*People v. Coley, supra,* 77 Cal.App.5th at p. 548.) Here, the jury was instructed with CALCRIM Nos. 400 and 401 on direct aiding and abetting, and with CALCRIM No. 600 on attempted murder. CALCRIM No. 600 specifically instructed the jury that to find a defendant guilty of attempted murder, the prosecution had to prove the defendant "intended to kill" the victim. (See also *People v. Lee* (2003) 31 Cal.4th 613, 623 ["[a]ttempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing"].) CALCRIM No. 401 instructed the jury that to find Stuart guilty on a theory of aiding and abetting, it had to find that Stuart knew the perpetrator "intended to commit the crime" and that Stuart specifically intended to "aid, facilitate, promote, encourage, or instigate" the commission of the crime. Critically, the jury was not instructed on the natural and probable consequences doctrine, the felony murder rule, or any theory which permitted the jury to impute malice to Stuart based on his participation in a crime.

5

The record of conviction establishes that Stuart was convinced either as the actual shooter or as a direct aider and abettor. To be found guilty as the actual shooter, CALCRIM No. 600 expressly required a finding that Stuart acted with the intent to kill. To be found guilty as a direct aider and abettor, CALCRIM No. 401 required a finding that Stuart both knew that the actual shooter intended to kill the victims and that Stuart intended to aid, facilitate, or encourage the murder. By convicting Stuart of attempted murder under either theory, the jury determined he acted with express malice. (*People v. Gonzalez* (2012) 54 Cal.4th 643, 653 ["Express malice is an intent to kill"].) Therefore, Stuart was not convicted of attempted murder under the natural and probable consequences doctrine or any other theory which permitted the jury to impute malice to him based solely on his participation in a crime. Stuart is therefore ineligible for relief under section 1172.6 and the trial court properly denied his petition at the prima facie stage.

III.   *Stuart's Supplemental Brief*

Under *Delgadillo*, we must evaluate the arguments raised in Stuart's supplemental brief. (*Delgadillo*, *supra*, 14 Cal.5th at p. 232 ["If the defendant subsequently files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion"].) In his supplemental brief, Stuart argues his appellate counsel should have raised the same arguments his appointed counsel raised below in the trial court.[2] Stuart's appointed counsel below

---

[2]     Stuart also points out that the information originally included a fourth count of possession of a firearm by a felon (§ 12021, subd. (a)(1)), which was dismissed and never presented to the jury. Stuart appears to suggest it was somehow improper for the jury to find true the allegation that he personally used a firearm in connection with the first three counts if the fourth count

6

raised two arguments in support of his petition for resentencing relief: We address each argument separately.

### A. *Langi*

We agree with the trial court that *Langi* is inapplicable here. In *Langi*, the defendant was one of four men who beat the victim. (*Langi, supra,* 73 Cal.App.5th at p. 975.) The victim ultimately died from head trauma when one of the punches thrown during the assault caused him to fall and hit his head. (*Id.* at pp. 976–977.) The jury was not instructed on the natural and probable consequences doctrine but was instructed on aiding and abetting liability. (*Id.* at p. 981.) The jury found the defendant guilty of robbery, battery, and second-degree murder. (*Id.* at p. 977.) The defendant later petitioned for resentencing under section 1172.6, which the trial court summarily denied at the prima facie stage.

The Court of Appeal reversed, finding the defendant was entitled to an evidentiary hearing because the instructions permitted him to be found guilty of aiding and abetting second degree murder without finding he personally acted with malice. The *Langi* court reasoned the jury instructions given on second degree murder and on aiding and abetting liability, when read together, created an ambiguity that could have allowed the jury to find the defendant guilty as an aider and abettor of second-degree murder even if he

---

was dismissed against him. Stuart offers no support for this assertion. "'When an appellant . . . asserts [a point] but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeited].'" (*In re A.C.* (2017) 13 Cal.App.5th 661, 672; accord *LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Assn.* (2023) 94 Cal.App.5th 1050, 1070.) The dismissal of the fourth count has no bearing on Stuart's entitlement to resentencing relief under section 1172.6.

only intended to assist in a battery or robbery and did not intend to aid or abet a killing. (*Langi, supra,* 73 Cal.App.5th at p. 983.)

Specifically, the jury in *Langi* was instructed with CALJIC Nos. 3.01 (aiding and abetting) and 8.31 (second degree murder). (*Langi, supra,* 73 Cal.App.5th at p. 981.) Under CALJIC No. 3.01, a defendant can only be convicted as an aider and abettor if the jury finds the defendant acted "[w]ith the intent or purpose of committing or encouraging or facilitating the commission of the crime." (*Ibid.*) It also requires a defendant to have knowledge of the "unlawful purpose" of the perpetrator. In *Langi*, the use of "unlawful purpose" and "crime" in the jury instruction was ambiguous as those terms could have referred to the other charged offenses of robbery or battery rather than murder. CALJIC No. 8.31 permitted a jury to find a defendant guilty of second degree murder without a showing that "the defendant intended that the act would result in the death of a human being." (*Ibid.*) Read together, CALJIC Nos. 3.01 and 8.31 therefore permitted the jury to find the defendant guilty of second degree murder without finding that he acted with the intent to kill. (*Id.* at p. 983.) This is the ambiguity at the heart of *Langi*: the possibility that the defendant was convicted of aiding and abetting murder when he only intended to aid and abet a non-murderous battery or other crime.

The ambiguity in *Langi* is not present here. We note the specific instructions at issue in *Langi*, CALJIC Nos. 3.01 and 8.31, were not given at Stuart's trial. Further, the ambiguity in *Langi* stemmed from the fact that the defendant in *Langi* was charged and convicted of robbery and battery in addition to second degree murder. This is what created the ambiguity as to whether the defendant intended to aid in the commission of a killing as opposed to one of the other charged crimes. This ambiguity does not appear

8

here as Stuart was only charged with three counts of attempted murder. As there was no other crime alleged, to be found guilty on a theory of aiding and abetting, CALCRIM No. 401 required the jury to find that Stuart "specifically intend[ed] to . . . aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that [attempted murder]."

Accordingly, *Langi* has no bearing on Stuart's petition for resentencing relief, and the trial court correctly rejected this argument below.

### B.  *Trial Error*

Stuart's counsel below also raised claims of error in Stuart's original trial. Counsel argued that CALCRIM No. 400 contained language deemed improper by *People v. McCoy* (2001) 25 Cal.4th 1111 (*McCoy*) and *People v. Samaniego* (2009) 172 Cal.App.4th 1148 (*Samaniego*). Specifically, counsel objected to the use of the phrase "equally guilty" in CALCRIM No. 400. Counsel also argued the prosecutor used this improper "equally guilty" language during closing arguments.

These arguments fall outside the scope of the section 1172.6 inquiry. Section 1172.6 is not a vehicle by which a defendant may raise claims of error in the trial that resulted in his or her conviction. (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947 [filing of a section 1172.6 petition "does not afford the petitioner a new opportunity to raise claims of trial error"]; *People v. Burns* (2023) 95 Cal.App.5th 862, 865 (*Burns*) ["Section 1172.6 does not create a right to a second appeal"].) Instead, under section 1172.6, the inquiry is whether a defendant could no longer be convicted under the law as amended by SB 1437 and SB 775. (*Lewis*, *supra*, 11 Cal.5th at p. 959; *Gentile*, *supra*, 10 Cal.5th at p. 847.) As our colleagues in the Fourth District explained in rejecting the precise argument raised by counsel below, the "equally guilty"

language in CALCRIM No. 400 may have "created a potential issue of instructional error, but it did not operate to offer the jury a theory of legal liability that can no longer support a conviction for murder as a result of the recent statutory changes." (*Burns*, 95 Cal.App.5th at pp. 868–869.)

*McCoy* and *Samaniego* were both decided before Stuart's conviction in 2011. If Stuart believed the jury instructions and prosecution's closing argument were rendered improper by those cases, his recourse was to object at trial and pursue the argument on direct appeal from his underlying conviction. (*Burns*, 95 Cal.App.5th at pp. 867–868.) Stuart raised no such claim in his direct appeal. "His failure to raise the argument on direct appeal forfeited that claim [citation], and the subsequent petition process created by the Legislature when it enacted Senate Bill No. 1437 did nothing to change the applicable law so as to resurrect an argument he had already abandoned." (*Id.* at p. 868.) Accordingly, these alleged errors in Stuart's underlying trial fall beyond the scope of resentencing relief under section 1172.6, and the trial court correctly rejected this argument.

In addition to rejecting the arguments Stuart raised in his supplemental brief, we have exercised our discretion to independently review the record, and we conclude no arguable issues exist. (See *Delgadillo, supra*, 14 Cal.5th at p. 232.)

**DISPOSITION**

The order denying Stuart's section 1172.6 petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, Acting P. J.

WE CONCUR:


MORI, J.


DAUM, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article IV, section 6 of the California Constitution.